McCormick, *et al. vs.* Mayor, &c. of Baltimore.

*Judgment reversed.*

(Decided 24th January, 1877.)

---

JAMES M. McCORMICK *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE. EDWIN H. WEBSTER and CAROLINE H. WEBSTER, his Wife *vs.* THE SAME.

*Dedication of land to Public use—Intent of the Owner to Dedicate his land—Evidence of such Intention—Mode by which Dedication may be evidenced—Case where the facts and circumstances did not Evidence a dedication—Rule for Assessing the Compensation to which the Owner of land in the bed of a Street, proposed to be taken for Public use, is entitled—When presumption of Dedication will not arise.*

It is not essential to a complete dedication of land to public use, that the legal title should pass from the owner, nor that there should be any grantee of the easement *in esse* to take the fee; nor is it necessary that there should be

McCormick, *et al. vs.* Mayor, &c. of Baltimore.

a deed or writing in order to evidence the dedication; but if the owner of the land has done such acts *in pais* as amount to a dedication, he is thereby estopped from denying that the public have a right to enjoy what is thus dedicated to its use, or from revoking what he has declared by his acts.

In the case of a clear act of dedication, as for a street, it is not essential to the validity of such act, that the space thus dedicated should, at once, be used by the public for that purpose, or that it should be so used within any limited time, in the absence of any condition to that effect

An intent on the part of the owner to dedicate his land to the particular use alleged is absolutely essential; and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists.

The evidence of such intention is furnished in various ways; but as dedication will be presumed where the facts and circumstances of the case clearly warrant it, so that presumption may be rebutted, and altogether prevented from arising by circumstances incompatible with the supposition that any dedication was intended.

If a street be designated on a plat made by authority, or by the party himself, as passing over certain lands, and the owner subsequently conveys lots fronting or binding on such street, he remaining the owner of the fee in the bed of the street, this is held to be a dedication of the land, over which the street passes, to the public use, and on opening the street, the owner of the fee will be entitled to nominal damages only as compensation.

J. McC. died seized of certain real estate located within the limits of the city of Baltimore; and as the streets were mapped out on the plat of the city, this real estate extended from Wolf street on the west to Gist street on the east, and from a line near Eager street on the north to a line beyond Monument street on the south. A partition among the heirs of the deceased was made by Commissioners in 1843, and the report of the Commissioners was finally ratified by the Court in 1846. This report was accompanied by a plat of the land divided, showing the lines of division, and that the division had been made with reference to the streets as delineated on the map of the city. According to the division thus made, the land on both sides of Washington street, as then designated on the map, was divided into squares or lots, which were made to run to and bind upon the centre of the street; the designated street being seventy feet wide. At the time of this partition, none of the streets mapped out on the plat of the city, and running through this land, had been opened or used north of Monument street; and in order to provide ways for the use of the lot owners, the Commissioners laid out roads ten feet wide, to run along the centre of the unopened streets. In

McCormick, *et al. vs.* Mayor, &c. of Baltimore.

their report they said, "We do award and allot to the lots and lot owners in this division, on that part of the land   *   *   *   *   lying north of Monument street, *the right of way along the centre of any of the streets not yet opened*, by a road or way ten feet wide, along the centre thereof, within the whole property, so as to communicate with east Monument street, *until other ways or roads are opened.*" By the original partition, lots Nos. 4 and 6 on the west, between Monument and Chew streets, and binding with the centre of Washington street, were allotted to W. L. McC., one of the heirs of the deceased, and lot No. 7, also on the west, and binding with the centre of Washington street, between Chew and Eager streets, was allotted to J. P. McC., another of the heirs; and lots Nos. 9 and 10 on the east, between Madison and Eager streets, and binding with the centre of Washington street, were allotted to J. M. McC ; and lot No. 11, also on the east, between Monument and Madison streets, and binding with the centre of Washington street, was allotted to W. After the partition J. M. McC. purchased from his brothers W. L. and J. P. McC., lots Nos. 4, 6 and 7, so that he became owner of the west half of the bed of Washington street from Monument to Madison, and of the entire bed of that street from Madison to a line near Eager street. The deeds for lots Nos. 4, 6 and 7, the one dated in 1845, and the other in 1847, defined and described the lots by reference to the plat filed in the proceedings for partition, and called to run northerly with the centre of Washington street. The bed of the street, from Monument street north to a point near Eager street, had been enclosed and cultivated for the last thirty years, and had never been used as a public street or way. On proceedings taken by the city for the opening of Washington street, J. M. McC. and W. were awarded only nominal damages upon the ground that the bed of said street, from Monument street north to a point near Eager street, had been previously dedicated to public use as a street by the Commissioners who made the aforesaid partition, and by the calls and the description in the deeds and maps submitted in evidence. On appeal to this Court, it was HELD :

1st. That there had not been a dedication of the bed of Washington street to public use in such manner as to preclude the owners thereof from claiming and receiving full compensation therefor upon condemnation by the city.

2nd. That in assessing the compensation to which the owners were entitled, the land in the bed of Washington street, proposed to be taken, should be valued precisely as if no such street was to be opened over it.

3rd. That the mere partition of the land was not an act of dedication. There was no part of the land assigned to the use of the street, and there was nothing to indicate an intention either on the part of the Commissioners

McCormick, *et al. vs.* Mayor, &c. of Baltimore.

making the partition, or the proprietors of the land, before or after partition, that the land, within the bed of the street, should be treated and regarded as dedicated to public use.

4th. That the reference to the streets, and the rights intended to be enjoyed therein, and by whom, having been fully explained by the Commissioners in their report of partition, no presumption of dedication could arise.

5th. That the deeds to J. M. McC. from his brothers did not effect a dedication of the street to public use.

APPEALS from the Baltimore City Court.

In the matter of opening Washington street, north of Monument street, the Commissioners for Opening Streets, allowed the appellants only nominal damages for the bed of the street proposed to be opened. The appellants thereupon appealed to the Baltimore City Court, claiming to be the owners of the bed of said street, and demanding full compensation therefor,—Webster and wife for the east half of the bed of Washington street, between Monument and Madison streets, and McCormick not only for the west half of the bed of Washington street between said streets, but also for the entire bed of Washington street, north from Madison street to a line near Eager street. The facts of the case are sufficiently stated in the opinion of this Court. The following is a copy of the plat returned by the Commissioners appointed to make partition of the real estate of the late James McCormick, Jr.:

McCormick, *et al. vs.* Mayor, &c. of Baltimore.

*Exception.*—The appellant James M. McCormick offered the following prayers:

1. That the proceedings in partition and the deeds to James M. McCormick offered in evidence, invested the said McCormick with a title in fee to one-half of the bed of Washington street, between Monument and Madison streets, and that it is not competent for the appellees to appropriate the same to the use of a public street without making him a just compensation therefor.

1½. Same as No. 1, with the qualification, provided the jury find from the evidence that Washington street has never been opened to, or used by, the public, and has been fenced in and enclosed for more than twenty years past, as shown by the testimony in the cause, claiming the same adversely.

2. That the proceedings in partition and the deeds to James M. McCormick, offered in evidence, invested the said McCormick with a title in fee to one-half of the bed of Washington street, between Monument and Madison streets, and that it is not competent for the appellees to appropriate the same to the uses of a public street without making him a just compensation therefor, provided the jury find from the evidence that Washington street, north of Monument street to Madison street, has never been thrown open to, or has been used by, the public, as a street or highway, but has been enclosed with their other property by the abutters thereon, each claiming to the half of said street for more than twenty years, and has been held adversely and treated and claimed as private property and as their own property, during that time each abutter recognized his co-abutter as the owner in fee as aforesaid, of half of the bed of Washington street, and each abutter has during said time claimed said half of said street as his own.

3. That even if the division of the McCormick estate as shown, did amount to a dedication so as to give a right of

way or use over the bed of Washington street, or any part thereof, to the heirs of said McCormick, to whom the abutting lots were awarded, yet, if the jury find no such right was used or claimed, but by common consent between all said abutters, the said street was used, held and agreed to be treated as the private property of the owners of the lots binding thereon, from the time of said partition to the time of these condemnation proceedings, and that said owners have fenced in and enclosed said property, as shown in the testimony, then the appellees cannot appropriate to the use as a public street, of the west half of Washington street, claimed by said McCormick, through its entire length, without making him just compensation therefor.

4. That the proceedings in said partition and the deeds to said McCormick, offered in evidence, invested said McCormick with a title in fee to the entire bed of Washington street, north of Madison street, to the northern outline of said McCormick's ownership thereof, and that it is not competent for the appellees to appropriate the same to the use of a public street without making just compensation therefor.

5. Same as No. 4, with the qualification, that the jury find from the evidence that Washington street has never been in fact opened to, or used by, the public, and has been fenced in and enclosed for more than twenty years past.

6. If the jury shall find from the evidence, that for more than twenty years past James M. McCormick and his grantors, and Edwin H. Webster and wife, have enclosed the ground from Monument street, to the northern outline of the McCormick property, and from Wolf street on the west, to Castle alley on the east, and have been in undisturbed possession thereof, and in adversary possession, claiming the whole thereof under the partition and deeds offered in evidence as their own property, in the

manner and to the extent shown in such partition and deeds, and all that time have used, rented or cultivated said whole enclosed property, paying taxes on the whole thereof, including the beds of streets projected to run through the same, then said appellees cannot appropriate the bed of Washington street to the use of a public street, without making just compensation therefor to said McCormick, and said Webster and wife, according to the extent of their several interests therein, viz., to McCormick for one-half of the entire bed of Washington street, from Monument street to Madison street, and for the whole of the bed from Madison street to the northern outline thereof, and to said Webster and wife, for one-half of the bed of said street, from Monument street to Madison street.

7. If the jury shall believe from all the evidence that McCormick and his grantors, and Mr. and Mrs. Webster, never intended to dedicate the bed of Washington street, then they are entitled to compensation for the bed of said street.

The prayers of the appellants Webster and wife, embraced the same principles as those of the prayers of the appellant McCormick, and are therefore not reported.

The appellees offered the following prayer:

That the respective lots claimed by the appellants, lying in the bed of Washington street, and for the taking of which by the city in proceedings for the condemnation of said street, the appellants in this suit claim to be compensated, were dedicated by the Commissioners in partition in *John P. McCormick, et al. vs. James M. McCormick, et al.*, and by the calls and the description in the deeds and maps submitted in evidence, and the appellants therefore are entitled to nominal damages only, and the verdict of the jury must be for the appellees.

The Court (PINKNEY, J.,) refused the prayers of the appellants and granted the prayer of the appellees. The appellants excepted. The jury by their inquisition affirmed

the award as made in each case by the Commissioners for Opening Streets, and judgment was entered accordingly. The appellants appealed.

The causes were argued before BARTOL, C. J., STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*John Carson,* for the appellants.

If the partition proceedings and the deeds worked a dedication, then there must have been first, an intention to dedicate; and secondly, an acceptance or use by the public to consummate the dedication. *Wash. on Easements, ch.* 1, *sec.* 5, *par.* 10, 12, 20, 30; 2 *Smith's Lead. Cases, t. p.,* 225, *m. p.,* 209, 211; *Irwin vs. Dixon,* 9 *Howard,* 10, 30, 32; *Bangor House vs. Brown,* 33 *Maine,* 315; *Holden vs. Trustees,* 21 *New York,* 474.

Now, what evidence is there of an intention to dedicate? Jas. McCormick, Jr., in his life-time owned all the beds of the streets; after his death his heirs owned them jointly, and the sole object of the partition proceedings was to allot in severalty what before was joint, and to do this *equally,* the only way was to treat the beds of streets as land, and give one-half to each heir whose lot bound thereon; otherwise the street must be opened, and the fee therein reserved expressly, or else granted, with a reservation of the easement in the street, which was not done.

The descriptions in the partition and in the deeds, treat the ground in the bed of the street, and outside of it, as one lot, and is so allotted; and each heir's title to one-half of the bed of the street is the same as that to the rest of the lot outside of the bed. The allotting in severalty and in fee of one-half of the bed of the street to each heir, is the clearest denial of any right therein in any other heir. The partition proceedings do not declare any street opened, but the contrary. The calls are not made for streets as opened, either expressly, or by the call for feet and inches;

the beds of the streets are not declared to be subject to the use of the street, or to be kept open as a street; there is no limitation on the right of each heir to do what he pleases with his half of the bed of the street. The heirs, by their deeds, claim to deal with the bed of the street as their own exclusive property, and reserve no rights in the street. It is clear there was no intention to dedicate the street.

Assuming however there was such intention to dedicate. The record shows there never was either acceptance, adoption, or use, by the public, to the time of trial, and this proof is not denied. The dedication therefore was never complete.

And the proof that the bed of the street for thirty years had been enclosed, and held exclusively, and farmed, &c., would be sufficient to show a revocation of the easement, which was acquiesced in by the Mayor and City Council of Baltimore, and the public, and it was competent for the parties so to revoke. *Washburne on Easements, ch.* 1, *sec.* 5, *par.* 7, 18, 19, 21; *Washburne on Easements, ch.* 2, *sec.* 3, *par.* 6; *Child vs. Chappell,* 5 *Selden,* 246; *Lee vs. Sandy Hill,* 40 *N. Y.,* 442; *Badeau vs. Mead,* 14 *Barbour,* 340; *Holdam vs. Trustees, &c.,* 21 *N. Y.,* 474; *Roman's Ex'rs vs. Town of Portland,* 8 *B. Mon.,* 236.

Can the dedication laid down in the appellees' prayer be claimed on the doctrine of implied covenant, as laid down by this Court in *White vs. Flannigan,* 1 *Md.,* 540, and *Hawley vs. Mayor, &c.,* 33 *Md.,* 270? The doctrine of implied covenant, is that of estoppel.

There may be no *dedication* in law, but when a party binds on a street, or calls for a street, he is estopped from saying there is no such street, because his deed says there is one. The rights under the estoppel are first private, and not the same as those which grow out of a dedication. But those rights subsequently work out a dedication, for when the street is thrown open to, and is used by the

public, the dedication is complete, both intention and acceptance are finally there, and the dedication is then supported without the deed.   Before the dedication is thus complete, if the city opens the street thus called for by deed, only nominal damages are allowed, because of the mere technical fee.   *Moale vs. Mayor, &c.,* 5 *Md.,* 314.

*James A. Buchanan,* for the appellees.

By the calls of the deeds and partition proceedings offered in evidence by the appellants, there was such a dedication of the bed of Washington street to public use, as entitled the appellants to only nominal damages for condemning and opening the same as a street.   *Browne vs. N. Y. R. R. Co.,* 23 *N. J.,* 61 ; *Manly, et al. vs. Gibson,* 13 *Illinois,* 312 ; *City of Dubuque vs. Benson,* 23 *Iowa,* 250 ; 1 *Hill's New York Reports,* 189.

There is no particular formality required in order to make a dedication.   *Washburne on Easements,* 183, 186. A plat showing streets and alleys without any other proof of dedication is sufficient.   *Godfrey vs. City of Alton,* 12 *Illinois,* 29 ; *Waugh vs. Leech,* 28 *Illinois,* 491.

If the adjacent owners continued to exercise ownership over the bed of Washington street until the same was condemned and opened, this would not defeat the dedication to the public.   2 *Strange,* 1004 ; *Cincinnati vs. White's Lessee,* 6 *Peters,* 437, 444 ; *New Orleans vs. U. S.,* 10 *Peters' S. C. Rep.,* 713 ; *White vs. Flannigan,* 1 *Md.,* 525 ; *Mayor & C. C. vs. Moale,* 5 *Md.,* 314.

If there was such a dedication of the bed of Washington street, to public use, as the appellees claim under the partition proceedings, plats and deeds offered in evidence by the appellants, then the delay in opening said street by the city, does not defeat its right to do so or revoke said dedication.   *Inhabitants of Staughton vs. Baker,* 4 *Mass.,* 526 ; *Angell on Limitations,* 31 ; *U. S. vs. Hoar,* 21 *Mason's C. C. Reports,* 312.

ALVEY, J., delivered the opinion of the Court.

These cases arise as between the city, proceeding to condemn the way for opening Washington street, and the lot owners on the sides thereof, owning to the centre of such street, from Monument street north to a point near Eager street.

It is claimed by the city, and has been so adjudged by the Court below, that the bed of the street thus proposed to be opened, between the points mentioned, has been heretofore dedicated to public use as a street, and therefore the lot owners are not entitled to more than nominal damages on the condemnations taken.. Whether this be so or not is the only question presented, or, at any rate, is the only question that need be decided on these appeals.

As the city makes the claim to exemption from real or substantial compensation for the land taken for the street, by reason of the alleged previous dedication to that purpose, it is incumbent upon it to establish clearly and beyond doubt, that such dedication has been made, and that too to the extent claimed.

The principles of the law of dedication would seem now to be pretty well defined, though not so until within comparatively recent times. It is now settled that it is not essential to a complete dedication that the legal title should pass from the owner, nor that there should be any grantee of the easement *in esse* to take the fee; nor is it necessary that there should be a deed or writing in order to evidence the dedication; but if the owner of the land has done such acts *in pais* as amount to a dedication, he is thereby estopped from denying that the public have a right to enjoy what is thus dedicated to its use, or from revoking what he has declared by his acts. *City of Cincinnati vs. White*, 6 *Pet.*, 431. And in the case of a clear act of dedication, as for a street, it is not essential to the validity of such act, that the space thus dedicated should, at once, be used by the public for that purpose, or

that it should be so used within any limited time, in the absence of any condition to that effect. *Barclay vs. Howell*, 6 *Pet.*, 504–5; *Washb. on Eas.*, (*3rd ed.*) 195. Whether there has been an acceptance of the dedication on the part of the public, or such long adverse user as to give rise to the presumption that the public have abandoned the right, are different questions, and which do not arise in this case.

An intent on the part of the owner to dedicate his land to the particular use alleged is absolutely essential; and unless such intention is clearly proved by the facts and circumstances of the particular case, no dedication exists. 2 *Dill. Munc. Corp.*, sec. 499, and cases there cited. The evidence of such intention is furnished in various ways; but as dedication will be presumed where the facts and circumstances of the case clearly warrant it, so that presumption may be rebutted, and altogether prevented from arising, by circumstances incompatible with the supposition that any dedication was intended. 2 *Sm. L. Cas.*, 95. As one of the modes by which dedication may be evidenced, if a street be designated on a plat made by authority, or by the party himself, as passing over certain lands, and the owner subsequently conveys lots fronting or binding on such street, he remaining the owner of the fee in the bed of the street, this is held to be a dedication of the land, over which the street passes, to the public use, and on opening the street, the owner of the fee will be entitled to nominal damages only as compensation. *Wyman vs. Mayor, &c.*, 11 *Wend.*, 486; *Livingston vs. Mayor, &c.*, 8 *Wend.*, 85; *Matter of Lewis St., N. Y.*, 2 *Wend.*, 472; *United States vs. Chicago*, 7 *How.*, 196; *Irwin vs. Dixon*, 9 *How.*, 30, 31; *Washb. on Eas.*, (*3rd ed.*) 202. In such case, the sale and conveyance of lots, so bounded upon the street, in the plan of the town or city, imply a grant or covenant to the purchaser, that the street thus indicated and called for shall be and remain

forever open to the use of the public, free from all claim
or interference of the proprietor of the estate therein,
inconsistent with such use.    It is supposed that the
existence of the street, either present or prospective,
entered into the consideration of the purchase, and thus
the grantor of the lot or lots sold has been compen-
sated for the public use of the street; and is, therefore,
estopped to make further claim for such use as against the
public.    *Rowan vs. Town of Portland,* 8 *B. Monroe,* 232,
237; *White vs. Flannigan,* 1 *Md.,* 540, 542; *Moale vs.
Mayor, &c.,* 5 *Md.,* 321; *Hawley vs. Mayor, &c. of Balti-
more,* 33 *Md.,* 270.    It is upon this principle that the city
claims in this case.

The claim that the bed of Washington street, between
the points heretofore mentioned, has been dedicated to
public use, has its foundation in the proceedings for the
partition of the real estate of the late James McCormick,
Jr. who was the father of James M. McCormick and
Mrs. Webster, the present appellants.    James McCor-
mick, Jr. died seized of a considerable parcel of real
estate, which was bought of the City Bank of Baltimore
in the year 1823, and located within the limits of the
city; and as the streets were mapped out on the plat of
the city, this parcel of real estate extended from Wolf
street on the west to Gist street on the east, and from a
line near Eager street on the north to a line beyond
Monument street on the south.    The partition was made
by Commissioners in 1843, and the report of the Commis-
sioners was finally ratified by the Court in 1846.    This
report was accompanied by a plat of the land divided,
showing the lines of division, and that the division had
been made with reference to the streets as delineated on
the map of the city.    According to the division thus
made, the land on both sides of Washington street, as
then designated on the map, was divided into squares or
lots, which were made to run to and bind upon the centre
of the street; the designated street being seventy feet

wide.   At the time of this partition, none of the streets mapped out on the plat of the city, and running through this land, had been opened or used north of Monument street; and in order to provide ways for the use of the lot owners, the Commissioners laid out roads ten feet wide, to run along the centre of the unopened streets.   In their report they say, " We do award and allot to the lots and lot owners in this division, on that part of the land before mentioned and conveyed by the City Bank of Baltimore to James McCormick, Jr. and lying north of Monument street, *the right of way along the centre of any of the streets not yet opened,* by a road or way ten feet wide along the centre thereof, within the whole property, so as to communicate with east Monument street, *until other ways or roads are opened.*"   By the original partition, lots Nos. 4 and 6 on the west, between Monument and Chew streets, and binding with the centre of Washington street, were allotted to William L. McCormick, one of the heirs of the deceased, and lot No. 7, also on the west, and binding with the centre of Washington street, between Chew and Eager streets, was allotted to John P. McCormick, another of the heirs; and lots Nos. 9 and 10 on the east, between Madison and Eager streets, and binding with the centre of Washington street, were allotted to James M. McCormick; and lot No. 11, also on the east, between Monument and Madison streets, and binding with the centre of Washington street, was allotted to Mrs. Webster.   Since the partition, James M. McCormick has purchased from his brothers, William L. and John P. McCormick, lots Nos. 4, 6, and 7, so that he is now owner of the west half of the bed of Washington street from Monument to Madison, and of the entire bed of that street from Madison to a line near Eager street. The deeds for lots Nos. 4, 6 and 7, the one dated in 1845, and the other in 1847, define and describe the lots by reference to the plat filed in the proceedings for partition, and call to run northerly with the centre of Washington

street. The bed of the street, between the points before mentioned, has been enclosed and cultivated for the last thirty years, and has never been used as a public street or way.

In such state of case, has there been a dedication of the bed of Washington street to public use, in such manner as to preclude the owners thereof from claiming and receiving full compensation therefor upon condemnation by the city? In view of the principles heretofore stated, we think clearly not. A party should not be deprived of his property without compensation, unless there has been some clear and decisive act of dedication.

Here, the mere partition gave rise to no such result. The streets, though unopened and unused, were delineated on the public plat of the city, and were therefore convenient and proper land-marks in the division of the land among the heirs of the deceased. There was no part of the land assigned to the use of the street, and there is nothing to indicate an intention either on the part of the Commissioners making the partition, or the proprietors of the land, before or after partition, that the land, within the bed of the street, should be treated and regarded as dedicated to public use. There was no covenant or agreement, either express or implied, among the heirs, that such should be the case; but, on the contrary, the provision in the report of the Commissioners, for the temporary use of ways along the centre of the streets, until other ways were opened, clearly negatives the idea of dedication. Why such a provision, if the entire street was dedicated to the public use? Why limit the *lot owners* to the use of ways ten feet wide, along the centre of the streets, if the entire street as designated on the city plat was intended to be a *public* way or thoroughfare, without compensation to the owners of the land? The reference to the streets, and the rights intended to be enjoyed therein, and by whom, are fully explained by the Commissioners in their report of partition; and where such is the case, no pre-

sumption of dedication will arise.   *Barraclough vs. John-son,* 8 *Adol. & Ell.*, 104.

And as to the operation of the deeds from William L. and John P. McCormick to James M. McCormick, it is very clear, we think, that they did not effect a dedication of the street to public use.   They conveyed the right of the grantors in the bed of the street, and whatever that right was the grantee is entitled to insist upon it.   We have said that the proceedings in partition did not effect a dedication as against the grantors ; and as there is nothing in the deeds to show that the parties designed to do more than simply refer to the boundaries of the lots as laid down on the plat of partition, subject to the right of way as provided in the Commissioners' report, it follows that the grantee in these deeds stands precisely as his grantors stood before the deeds were made.   Indeed, his position, in respect to the property conveyed by the deeds, is not distinguishable, in point of principle, from that of Moale in respect to lot No. 9, in the case of *Moale vs. Mayor, &c. of Baltimore,* 5 *Md.*, 314, 323.   In that case, inasmuch as Moale had acquired a complete title to lot No. 9, though it was described in the deed under which he claimed as forming a part of the bed of east Biddle street, the Court said that he was just as much entitled to be compensated for it, when taken for the use of the street, as would have been the original proprietors of it, in the absence of all previous dedication.   And it was there held, that the true rule for assessing compensation to the owner of a lot lying on the bed of an unopened street, was to value the land taken for the street, *precisely as if no such street was to be opened over it.*   And thinking the appellants here so entitled for their land in the bed of Washington street, proposed to be taken, we shall reverse the judgments appealed from, and remand the causes for new trials.

*Judgments reversed, and
new trials awarded.*

(Decided 24th January, 1877.)