## WHITTINGTON *v.* MANN ET AL.

[No. 18, October Term, 1956.]

*Decided November 9, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*John G. Remey* for the appellant.

*George B. Woelfel* for Mr. Mann, appellee.

*Emanuel Klawans* for Mr. Clark, appellee.

HAMMOND, J., delivered the opinion of the Court.

Oscar Mann, one of the appellees, filed a bill for specific performance of a contract by Thomas Clark, the other appellee, to purchase a lot of ground contiguous to a platted development called Herring Bay View, which Mann had subdivided into lots. Clark's answer alleged that Alrano Whittington, the appellant, owner of two lots in Herring Bay View, claimed a right of way thirty feet wide along two sides of the piece of ground he had bought. He filed a cross-bill against Mann for the diminution in the value of the lot that Whittington's right of way, if established, would cause, and interpleaded Whittington, who, in his answer, asserted claim to the right of way across the lot in question. The Chancellor held that the right of way did not pass over the lot but, rather, ran to the east of it, as laid out on a recorded plat of Herring Bay View, and granted specific performance against Clark, the purchaser.

Whittington's appeal urges that the right of way does pass

over the lot so that the decree was erroneous and that the Chancellor should not have considered Mann's testimony that but one right of way was intended and should have admitted in evidence an unrecorded plat which, it is claimed, shows Mann's intent that the course of the right of way be as appellant claims it is.

In 1927 Mann recorded a plat of Herring Bay View showing lots numbered from 1 to 77 abutting on streets, with three unnumbered pieces of land. His testimony was that the unnumbered pieces were mere marshes that some day he hoped to fill but which were not in the subdivision. One of these pieces is the one Mann sold to Clark. This is the only plat that has been recorded and all sales or conveyances of the land were made by reference to the plat.

The plat shows part of a county road running east and west. It shows further a private road thirty feet wide extending south from the county road in a straight course to the waters of Rockhole Creek. For the first 357 feet south from the county road, the private road runs along the west line of Herring Bay View and is parallel with the east side of the property of Virgil Rogers. At this point the lot sold by Mann to Clark comes into the picture. From a point 357 feet south of the county road to Rockhole Creek, a distance of approximately 200 feet, the private road runs through Mann's land with Herring Bay View to the east and the lot sold by Mann to Clark to the west. The appellees contend that the private road shown on the plat is the thirty foot right of way to which Whittington is entitled.

Whittington admits that the right of way enjoyed by him is the private road shown on the plat for the first 357 feet south from the county road. He contends, however, that beginning 357 feet south of the county road it turns southwesterly at about a forty-five degree angle and runs along the northwest line of the Mann-Clark lot, which is also the southeast line of the Virgil Rogers land, for a distance of 259.80 feet, and that it then turns at right angles and runs southeasterly parallel with that line of the Mann-Clark lot for 87.8 feet to Rockhole Creek. The right of way claimed by him is over 700 feet long.

Whittington's claim arises from two deeds to predecessors in title, Harry C. Horton and wife. By the first deed, dated May 13, 1936, Mann conveyed to Horton and wife that lot "which is designated as Lot No. 69 on the Plat of Herring Bay View, which Plat is duly recorded among the Plat Records of Anne Arundel County in Plat Book F. S. R. No. 1, folio 21." The grant of the right of way was in this language: "And particularly the right of way over a strip of land 30 feet in width, running along the North side of Grantors' property, parallel with the East side of property of Virgil Rogers, to the waters of Rockhold Creek, said strip of land being about 554 feet in length."

The second deed was dated June 23, 1936, and by it Mann conveyed to the Hortons all that lot of ground "which is designated as Lot No. 70 on the Plat of Herring Bay View, duly recorded among the Plat Records of Anne Arundel County in Plat Book F. S. R. No. 1, folio 21." The grant of the right of way was in the following language: "TOGETHER with a right of way over a strip of ground 30 feet in width running along the northwest side of the property of the said Oscar Mann, parallel with the east side of the property of Virgil Rogers, to the waters of Rockhold Creek, said strip of land being about 554 feet in length."

There is an obvious ambiguity in the description of each of the deeds from Mann to the Hortons. Neither the north nor northwest side of Mann's property runs parallel with the east side of the property of Virgil Rogers, so it is a concessum in the case that in the deeds of lots 69 and 70, respectively, north and northwest side should read west side. The common lines of the Mann and Rogers property, other than the west and east lines respectively, do not fulfill any description in the Horton deeds. It is conceded, too, that at no time has either the right of way on the plat or the right of way claimed by Whittington existed on the ground, so that there is no physical evidence as to the intention of the parties. It was shown that Rockhole Creek at the end of the right of way on the plat was filled up by dredging operations of the Federal Government in 1941, but that it is still open along the westernmost 70 feet of the property which Clark contracted to purchase from

Mann. However, when the Horton deeds were executed and delivered, there was water in Rockhole Creek at the end of the thirty foot right of way on the plat, as well as at the edge of the Clark property, so that no inference can be drawn that access to otherwise unavailable water was the basis for a relocation of the right of way to Whittington. Other pertinent testimony was that there were but four deeds in all that referred to a 30 foot right of way. There were the two Horton deeds, and a deed in 1927 to one Bonifant of lots 72 and 73 on the plat with "a right of way over the thirty (30) foot road running along the southwestern side of said Grantors' property, parallel with the east side of the property to Virgil Rogers, to the waters of Rockhold Creek, as shown on the above-mentioned plat." The fourth deed was to one Chilson of lots 38, 39 and 40 as shown on the plat, with "the right of way over a strip of land thirty feet in width, running along the North West side of grantors' property, parallel with the East side of the property of Virgil Rogers, to the waters of Rockhold Creek, said strip being about 554 feet in length."

Two witnesses testified that they had measured the right of way as shown on the plat and found its length to be exactly 554 feet. One of the witnesses measured the right of way contended for by Whittington and found its total length to be 725 feet, and the other witness scaled its length as 707 feet.

To be ascertained is the intention of the parties found from the language of the deeds, considered in the light of attendant circumstances at the date of execution and delivery. "It will do no harm to reiterate that the general rule, and the one from which all the others are derived, is that the construction must accord as nearly as possible with the intent of the parties * * *." 3 *American Law of Property*, Part 12, *Deeds*, V, *Topic 2, Construction of Descriptions*, Sec. 12.110, p. 423. The same volume says at Sec. 12.115, p. 440: "It must be kept in mind that the rules for awarding priorities among conflicting terms have been developed as a means for determining intention of the parties. Accordingly they will not be followed and the priorities may be reversed when it appears that the application of the rule would defeat that intention. In other words these are rules of construction rather

than rules of property." See also 4 *Tiffany, Real Property,* Third Ed., Sec. 993.

Since the Horton deeds conveyed the lots by reference to the recorded plat of Herring Bay View, that plat became incorporated as part of the deeds. *Burk v. Baltimore,* 77 Md. 469; *Carey v. Adams,* 202 Md. 158, 164; *Phelps v. Phelps,* 17 Md. 120. The *prima facie* intention of the parties must be taken to be that the right of way shown on the plat was that intended to be granted. That right of way measures 554 feet on the plat and it is to be noted that in three of the four deeds referring to the right of way, that exact figure of 554 feet is set out as its length. The fourth deed describes the right of way as "shown on the above mentioned plat", so that it, too, would be 554 feet. In *Carey v. Adams, supra,* lots were conveyed by reference to a recorded plat. The plat showed a highway running north and south and lots abutting on its east and west sides. A new survey disclosed that an existing highway in actual use did not conform with the location of the highway as shown on the recorded plat, in that the highway in actual use ran across the lots in the block which the plat showed as bounding the highway on the east, leaving a strip of land between the existing highway and the highway as it was shown on the plat. The appellant, in her declaration, said that she was the owner of that strip and that the deeds to her predecessors in title called for a boundary on the highway regardless of the plat. This Court affirmed the judgment against her below and said: "The effect was to incorporate the recorded plat by reference and we look to it to identify the land conveyed. * * * There was no error in the plat, or in the description of the lots therein contained."

The descriptions in the Horton deeds cannot be read to describe precisely the right of way as shown on the plat, but if the deeds, as is contended (and that seems to be the case), were drawn by a layman, it is not difficult to read the descriptions as compatible with the platted road. The descriptions, corrected to remove the admitted error, would read that Horton took title to the right of way over a strip of land thirty feet in width, running along the West side of Oscar Mann's property, parallel with the East side of the property of Virgil

Rogers, to the waters of Rockhole Creek, said strip being about 554 feet in length. The west side of the property of Oscar Mann and the east side of the property of Virgil Rogers run parallel for 357 feet and the parties may well have intended, as we think they did, that the course of the right of way was determined by the reference to the Mann west line and the Rogers east line and the distance of the line so established was specified as 554 feet to Rockhole Creek. The uniformity in the four grants that the 30 foot right of way runs for a distance of 554 feet is significant, for Whittington's construction would result in a right of way of over 700 feet, particularly in view of Mann's testimony that only one thirty foot right of way was ever intended.

The appellant objects to this testimony as inadmissible. We need not determine whether it was or was not, because, although it was objected to once and the objection was sustained, the same testimony came in several times without objection. Since it was in evidence, we think the Chancellor was entitled to give it such weight as he thought it intrinsically worth.

The appellant's other objection on the question of evidence is that an unrecorded plat from the tax assessor's office should have been admitted in evidence on his offer, to show that the lot Clark bought from Mann had been roughly subdivided by Mann some years before in preparation for its sale as lots. Appellant desired the plat in evidence to show, as he claimed, that there would have been no access to several of the proposed lots unless the right of way claimed by Whittington had been the one intended. We think there was no prejudicial error in not admitting the plat since it is apparent that if any inferences could have been drawn from it as to intent, it would do far more to defeat a finding of the intention sought by the appellant than to sustain it. The plat shows that there would have been no access to at least one of the lots even if the Whittington right of way had been the one granted, and shows further that the Whittington right of way, if in effect, would have taken all but 13 feet of the water front of one of the lots. There was clearly no harm to the appellant's cause from the refusal to admit this plat.

The Chancellor held that it was not necessary to construe the language of the Horton deeds strongly against the grantor, Mann, since this rule of construction need be referred to "only where all other rules of exposition fail to reach, with reasonable certainty, the intention of the parties." *Zittle v. Weller,* 63 Md. 190; *Hodges v. Owings,* 178 Md. 300. The Chancellor found that it had been shown with reasonable certainty that it was the intention of the parties to grant the Hortons the right of way shown on the plat. He relied on *Carey v. Adams, supra,* with some support in the testimony of Mann that but one 30 foot right of way was ever intended. Nothing in the record or in the briefs, or in the argument before us, has led us to conclude that the Chancellor was in error.

*Decree affirmed, with costs.*